### William O. Spear, Sr. et al v. State Highway Board

[ 175 A.2d 511 ]

September Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 7, 1961

*Leary & Leddy* for the plaintiffs.

*Charles J. Adams* for the defendant.

**Hulburd, C. J.** In this highway condemnation case, the jury returned a special verdict saying, "We do find that the land lying on the west side of the old United States Route No. 7 across the road from the plaintiffs' gasoline station is inextricably related to and connected with the gasoline station and the business conducted thereon." The question is whether such a finding can be supported by the evidence in this case.

The Spears own land in Charlotte on both sides of United States Route No. 7. On the land on the easterly side is located Mr. Spear's Esso gasoline filling station which he has operated since 1950. Opposite, on the westerly side, is a vacant piece of pasture land which the Spears acquired in 1959. It is through this land on the westerly side that the new highway will run. Mr. Spear was asked on cross-examination: "What use have you made of this land while you have owned it?" He answered: "None." Perhaps we should also give the two questions and answers which followed the foregoing:

Question: Just let it grow up?

Answer: I was going to put it into pasture.

Question: Have you pastured it at all?

Answer: No, not after I knew what was going to happen, it was useless.

Elsewhere in his testimony Mr. Spear testified that there was not enough business for two service stations in the area, and so his only purpose in buying the land across the road from his station was to protect himself from the possibility of a competing station being built there. As it has developed, instead of a competing station, he finds himself with a relocated highway on his other lot. By its relocation, some three hundred feet westerly of the present road, Mr. Spear is left with his filling station on the old highway which will merely come down as far as his station as a dead-end spur from Route No. F-5,

a cross-road two hundred fifty feet to the north. The evidence makes it clear that a filling station so situated is not in a position to benefit in the same way that one would be which is directly located on Route No. 7 with its heavy north-and-south through traffic. It was Mr. Spear's opinion that under the new conditions, "we won't be able to operate." In short the Spears find themselves in the same position that a great many business men have when a highway relocation has by-passed their places of business. The customers are no longer going by their door. They have been routed elsewhere. For this sort of loss, the legislature has never attempted to provide compensation. Whole communities might be seeking damage had it done so. Our statute relates business loss to property taken, not to highway relocation. 19 V.S.A. §221 ; *Penna* v. *State Highway Board,* 122 Vt. 290, 292, 170 A.2d 630.

The plaintiffs seek to take themselves out of the general category of highway relocation victims by starting off with the fact that land of theirs was actually taken for the new highway. This doesn't go very far. Had the land taken been part of the plaintiffs' residence lot situated, say, a quarter of a mile to the north, the plaintiffs would hardly lay claim that that taking helped their cause with respect to the by-passed filling station. The fact that their land which was taken happens to be directly across the road from where the plaintiffs have their place of business is of itself of no importance. It is only when the land taken is used in connection with the business carried on across the road that the taking acquires significance. If the condemned land had been used, for example, for overflow parking, then business loss would be a proper matter for the jury to consider in arriving at the amount of compensation which the plaintiffs would be entitled to receive. The record discloses no such uses. It discloses that no use at all was made of the land taken. The land was merely held for "protection." If such a holding is to be regarded as a use, it is a use which certainly was not disturbed by the taking.

■ The plaintiffs rely heavily on the case of *Essex Storage Electric Co., Inc.* v. *Victory Lumber Co.,* 93 Vt. 437, 108 Atl. 426. This case was decided before our present highway condemnation statute was enacted but we agree that its principle is still valid. It is this : where land is condemned which is a part of separate parcels of real estate constituting one enterprise, the mutually dependent elements

thereof are in the eye of the law a single parcel and are to be so treated in assessing damages. In order to come within this rule, it is essential that each parcel of the aggregate be dependent upon the other. In other words there must be "mutual dependence." In the *Essex* case, the timber derived its value, to a considerable extent, from its location with reference to the mill, and conversely the mill owed its·value, to a considerable extent, to the nearby stand of timber. Each supplied something to the other in the enterprise of lumber production. In our present case, if it may be said that the "protection" furnished by the ownership of the pasture land was an element in the filling station's operation, it cannot be said that the filling station furnished anything of use to the pasture land. In short, since mutual dependence does not appear, the plaintiffs have failed to bring themselves within the rule of the *Essex* case.

It follows that the special verdict rendered by the jury lacks the necessary support in the evidence, and, since it is self-evident that the jury's general verdict in favor of the plaintiff was based on a theory of damage not permitted by the statute, it cannot stand. The defendant has asked us to enter judgment for the plaintiffs in a specific sum, claiming that but one result can be reached if business loss is eliminated. The defendant is not borne out by the transcript in this respect since there is evidence, at odds with this claim, that the balance of the westerly parcel would have no market value after the taking. On this state of the record, we cannot enter judgment here.

*Judgment reversed and cause remanded.*