2008 VT 68

## In re SOUTH BURLINGTON/SHELBURNE HIGHWAY

[956 A.2d 1121]

Nos. 07-091 & 07-123

¶ 1. May 15, 2008. These consolidated appeals arise out of the expansion of Route 7 in Shelburne. Landowners, Ondovchik Family Limited Partnership and Gabriel Handy, as trustee of the DDH-GSH Trust, appealed compensation awards made by the Vermont Transportation Board for property adjacent to the highway that was taken to widen the road. Landowners sought additional compensation for alleged damage to their property caused by highway and sidewalk snow removal. The superior court declined to allow landowners to present evidence regarding such damages. We affirm.

¶ 2. Landowner Ondovchik Family Limited Partnership owns a parcel of land located on the west side of Route 7 in Shelburne. The parcel includes a building

that once housed the Harbor Hideaway Restaurant, but has been idle since 1987. Landowner MMD, LLC, the successor-in-interest to Gabriel Handy, owns a parcel of land located on the west side of Route 7 in Shelburne on which an Econolodge motel is located. Pursuant to an order of necessity that we affirmed in *In re South Burlington-Shelburne Highway Project*, 174 Vt. 604, 817 A.2d 49 (2002) (mem.), the State acquired by eminent domain a portion of each landowner's property immediately adjacent to Route 7 to facilitate the expansion of the highway. To compensate for the takings, the Transportation Board awarded Ondovchik $43,400 for .13 acres in fee simple interest and Handy $213,200 for .18 acres in fee simple interest. The takings, which were recorded with the town on April 7, 2003, and August 23, 2002, respectively, included rights, title, and interests of each landowner to pre-existing rights-of-way over Route 7 and related temporary and permanent easements. Each landowner then separately appealed the Board's award to Chittenden Superior Court. See 19 V.S.A. § 513 (setting procedure for appeal from order fixing compensation).

¶ 3. During the discovery phase in the Ondovchik appeal, Ondovchik indicated that it intended to introduce evidence regarding the effect of snow thrown by plows clearing reconstructed Route 7 and the adjoining municipal sidewalks. Ondovchik sought to use the evidence to show that the Board had not considered plausible and substantial threats, including those caused by the leaching of contaminated water, to the utility and integrity of the buildings remaining on the properties in determining the compensation awards. In response, the State filed a motion in limine to exclude all evidence relating to the potential effects of snow thrown on the property. The State asserted that the damages were too speculative and were not the direct and proxi-

mate result of the taking and therefore were not compensable under 19 V.S.A. § 501(2). On December 19, 2006, the superior court granted the State's motion, reasoning that there was no legal precedent for Ondovchik's "snow throw" damages claim. On February 20, 2007, the superior court denied Ondovchik's motion for interlocutory appeal, noting the need for a final judgment on the "snow throw" issue and thereafter entering a stipulation for dismissal and entry of final judgment between the parties on February 27, 2007.

¶ 4. Following the superior court's decision on the motion in limine in the Ondovchik appeal, and in response to a similar intention by landowner Handy to present evidence of damages caused by snow thrown onto his property, the State filed a motion in limine and motion to dismiss in the Handy appeal on January 9, 2007. The State's motion incorporated by reference its earlier reasoning from the Ondovchik case and also asserted that Handy lacked standing to allege compensable harm from the snow and contaminated water that affect all properties along highways. The superior court relied on its ruling in Ondovchik in granting the State's motion on February 12, 2007. To facilitate an appeal, the superior court then entered a final judgment with the agreement of the parties. Because these appeals present the same legal question and involve similar facts, we consolidated the cases for decision.

¶ 5. Landowners assert that the superior court erred as a matter of law in granting the State's motions in limine. Specifically, landowners contend that the plowing of snow onto their lands is the direct and proximate result of the takings and that they are entitled to present evidence of severance damages because the operation of the project on Route 7 will deprive the properties of their highest and best use and require removal or replacement of the remaining buildings

on the land. Because the resolution of this appeal involves the construction and application of statutory language, our review of the trial court's decision is nondeferential and plenary. *In re T.C.*, 2007 VT 115, ¶ 12, 182 Vt. 467, 940 A.2d 706. Landowners are correct that 19 V.S.A. § 501(2) requires that property owners be compensated for both the value of land taken through eminent domain and the direct and proximate decrease in value of the remaining land. *Pinewood Manor, Inc. v. Agency of Transp.*, 164 Vt. 312, 319, 668 A.2d 653, 658 (1995) (defining the direct and proximate decrease in value as "severance damages"); see also *Crawford v. State Highway Bd.*, 130 Vt. 18, 24, 285 A.2d 760, 764 (1971) ("Just compensation for the property taken is construed as being reimbursement of the fair market value of the property taken, plus the damage suffered by the remainder."). We agree with the State, however, that damages resulting from alleged future harm to landowners' property do not directly and proximately result from the taking of plaintiffs' property and are not compensable. We thus affirm the superior court's decision with respect to both claims.

¶ 6. In our recent decision in *Ehrhart v. Agency of Transportation*, we recognized that 19 V.S.A. § 501 governs the determination of just compensation for takings that result from highway construction. 2006 VT 68, ¶ 7, 180 Vt. 125, 904 A.2d 1200. The statute provides:

> Damages resulting from the taking or use of property under the provisions of this chapter shall be the value for the most reasonable use of the property or right in the property, and of the business on the property, and *the direct and proximate decrease in the value of the remaining property or right in the property* and the business on the property.

19 V.S.A. § 501(2) (emphasis added). The statutory provision is broad in that it allows compensation for losses, including business losses, above and beyond the actual value of the land. See *In re 89-2 Realty*, 152 Vt. 426, 429, 566 A.2d 979, 980 (1989) ("Compensation for business losses is statutory in Vermont, one of the few states to recognize loss to the individual over and above the value of the land."). We have noted, however, that "Vermont's statutory scheme significantly limits [a landowner's] recovery by compensating for only those losses directly and proximately caused by the physical loss of property." *Ehrhart*, 2006 VT 68, ¶ 7.

¶ 7. In the present case, landowners do not challenge the compensation awards for the physical taking of their properties but instead assert that they should receive additional compensation for damages that will allegedly arise when snow and debris are plowed onto their property. They contend that the damages will be the "direct and proximate" result of the newly expanded Route 7. To bolster their position that such future damages are compensable, landowners rely on decisions from other jurisdictions that have permitted recovery of severance damages attributable to the intended operation of a project for which the land was taken. See *People ex rel. Dep't of Pub. Works v. Volunteers of Am.*, 98 Cal. Rptr. 423, 435 (Ct. App. 1971) (holding that the taking of a parcel of land for freeway improvement warrants the allowance of severance damages occasioned by the construction and operation of the freeway to the remainder, and that trial court erred in refusing to receive evidence of such damages); *State Dep't of Transp. & Dev. v. Van Willet*, 383 So. 2d 1344, 1352-53 (La. Ct. App. 1980) (allowing compensation for damages caused by the resulting noise and vibration of a project). Such reliance is misplaced. In *Ehrhart*, we distinguished Vermont from the minority of jurisdictions that allow compensation in

takings cases for damages caused by the entire project in holding that "the fact that the highway project required the taking of landowners' property does not make all losses resulting from the project . . . compensable." *Ehrhart*, 2006 VT 68, ¶ 10. Because § 501(2) requires compensation only for losses that result directly from the taking itself, we find landowners' precedent from other jurisdictions unpersuasive.

¶ 8. As suggested by their reliance on more lenient out-of-state precedent, landowners' claims do not satisfy the "direct and proximate" requirements of § 501(2). Landowners assert that state and municipal plans for snow removal from the road surface and sidewalk, or the absence thereof, will result in damages to their land and buildings. Thus, rather than attributing the alleged harm directly to the land actually taken by the State, landowners have instead identified the cause as the operation of the project for which their land was taken. According to landowners, this attenuated chain of causation does not foreclose the "direct and proximate" nature of the State's harm in the present case. We have addressed an analogous argument before. In *Ehrhart*, the plaintiff landowners contended that business losses resulting from the installation of a median strip that restricted traffic access to their businesses were compensable under the "direct and proximate decrease" language of § 501(2) because the State could not have built the median strip without taking the landowners' property. *Ehrhart*, 2006 VT 68, ¶ 12. We dismissed this contention for two reasons, both pertinent to the present case. First, on the issue of causation, we found that it was the highway project that caused the taking of the plaintiffs' land, and not the other way around. *Id.* Second, we held that the widening of the road and resulting decrease in the flow of business to the plaintiffs' property were both merely incidental effects resulting from

the highway project. *Id.* In the present case, the alleged damages that may result from snow removal and storage, like the business losses in *Ehrhart*, are the indirect result of the operation of the highway project and are properly characterized as a potential incidental effect. As in *Ehrhart*, plaintiffs have been compensated for the value of their land, which is the only direct and proximate loss caused by the taking. *Id.*

¶ 9. Finally, the damages alleged by landowners, in addition to not being the direct and proximate result of the State's takings, are too speculative to be compensable under Vermont law. In *Raymond v. Chittenden County Circumferential Highway*, we upheld the longstanding principle that valuation of property taken by the State "must occur as of the date of the taking" and is equivalent to the "value of the parcel appropriated together with the difference in the fair market value of the remaining property immediately before, and immediately after, as a consequence of the taking." 158 Vt. 100, 103-04, 604 A.2d 1281, 1283-84 (1992) (citing *Childrens' Home, Inc. v. State Highway Bd.*, 125 Vt. 93, 95, 211 A.2d 257, 260 (1965)); see also *Pinewood Manor, Inc.*, 164 Vt. at 316, 668 A.2d at 656 (awarding developer value of land on the date of taking, not the retail value expected once the infrastructure was completed). As noted above, landowners seek additional compensation in this appeal for harm that will allegedly result from snow thrown onto their property from expanded Route 7, as well as the related infiltration of contaminated water on their property. These damages, however, could not have occurred until the highway was expanded. This forecloses the possibility that the damages occurred either on or immediately after the date of the takings, and thus their consideration was properly excluded from the determination of landowners' compensation awards under *Raymond*. In fact, the

record remains devoid of proof that damages feared by landowners have actually been realized. As noted by the State, the effect of the proof proffered by landowners is merely to confirm the likely result that snow from the highway was deposited on plaintiff Ondovchik's property without providing any evidence of actual damages that could be compensable under § 501(2). Because landowners' claims remain unrealized, and therefore unproven, we affirm the superior court's decision to exclude evidence of "snow throw" damages because landowners are not entitled to compensation under § 501(2) beyond what they have already received for the fair market value of land taken.

*Affirmed.*