### Ondovchik Family Limited Partnership v. Agency of Transportation

[996 A.2d 1179]

No. 09-182

Present: **Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Crawford, Supr. J., Specially Assigned**

Opinion Filed April 30, 2010

*Christina A. Jenson* of *Lisman, Webster & Leckerling, P.C.*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Daniel D. Dutcher*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Landowner Ondovchik Family Limited Partnership appeals from the trial court's dismissal of its lawsuit against defendant Vermont Agency of Transportation. Landowner owns a building in Shelburne. As a result of defendant's recent expansion of Route 7, landowner's building is less than eight feet

from that highway. This lawsuit stems from alleged damage to that building from snow throw and water runoff from defendant's snowplowing of the highway. In its amended complaint, landowner presented two claims: (1) trespass, based on the theory that defendant (through snow throw and water runoff) is physically invading landowner's property; and (2) inverse condemnation, based on the theory that defendant has physically taken those parts of the property hit by snow throw and water runoff and that landowner is therefore owed compensation. The trial court rejected both theories and dismissed the case. We affirm.

¶ 2. The facts of this case are largely undisputed. That said, because this appeal arises out of defendant's successful motion to dismiss, if there are any facts in dispute, "we must assume as true all factual allegations" pleaded by landowner. *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997).

¶ 3. This dispute goes back many years. In 2000, defendant filed a necessity petition to condemn land to expand Route 7 in Shelburne — an expansion that landowner opposed. The trial court granted the necessity petition, and we affirmed that decision in 2002. *In re S. Burlington-Shelburne Highway Project*, 174 Vt. 604, 817 A.2d 49 (2002) (mem.). Defendant then undertook condemnation proceedings of certain land, including 0.13 acres of landowner's land. Landowner received $43,400 in compensation. In the next round of litigation before this Court, landowner sought additional compensation for various impacts to landowner's property that defendant had not considered, including damage to landowner's nearby building from snow throw and water runoff. *In re S. Burlington/Shelburne Highway (Ondovchik II)*, 2008 VT 68, 184 Vt. 553, 956 A.2d 1121 (mem.). At the time, no snow throw or water runoff had occurred because the highway had not yet been expanded. Under 19 V.S.A. § 501(2), landowners who have a portion of their property condemned during eminent domain proceedings can collect additional compensation for any "direct and proximate decrease in the value of the remaining property." We interpreted this statute in *Ondovchik II*, where we held that "damages resulting from alleged future harm to landowners' property do not directly and proximately result from the taking of plaintiffs' property and are not compensable." 2008 VT 68, ¶ 5.

¶ 4. In the current dispute, the highway expansion has occurred, and landowner now makes additional allegations, which, as noted, we assume to be true. *Amiot*, 166 Vt. at 291, 693 A.2d at 677.

Specifically, landowner alleges that damage to its building is no longer merely an "alleged future harm," but has in fact come to pass now that the highway has been expanded to within eight feet of the building. Defendant owns a five-foot-wide sidewalk within those eight feet. Landowner alleges that defendant's snowplows propel snow and water runoff across the sidewalk and onto landowner's building. Landowner also alleges that the water runoff is contaminated.

¶ 5. On appeal, landowner raises three arguments for overturning the trial court's dismissal of the case. First, landowner argues that the trial court made a procedural error when it failed to notify landowner of the proposed grounds for dismissal, thereby unfairly depriving landowner of an opportunity to respond in writing or at a hearing. Second, landowner argues that the trial court erred in dismissing its trespass claim. Third, landowner argues that the trial court erred in dismissing its inverse condemnation claim. According to landowner, each of its theories of liability suffices to meet the "exceedingly low" threshold for surviving a motion to dismiss. *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990 (mem.) (quotation omitted). We hold that all three of these arguments are meritless.

¶ 6. Landowner's first argument is that the trial court's decision must be reversed because the court never notified landowner of the proposed legal grounds for dismissal. Landowner is correct that defendant's motion to dismiss failed to raise the issues that the trial court ultimately found dispositive. Defendant's motion made only two legal arguments: (1) no other courts have found liability for snowplowing; and (2) defendant has sovereign immunity. The trial court ultimately dismissed the case on different grounds. Nevertheless, we find no error in the trial court's actions.

¶ 7. Landowner's argument relies on *Huminski v. Lavoie*, where we stated that "before the trial court may dismiss a complaint for failure to state a cause of action on its own motion, the court must notify the parties of the proposed action, and afford an opportunity to address the asserted grounds for dismissal." 173 Vt. 517, 519, 787 A.2d 489, 492 (2001) (mem.) (citing *Town of Westminster v. Hall*, 139 Vt. 248, 250, 428 A.2d 1095, 1096 (1981)). Landowner reads too much into *Huminski*. The rationale behind *Huminski* was that "although a claim may be entirely

spurious on its face, the court cannot know, without hearing the parties, whether the plaintiff may be able to amend the complaint sufficiently to state a claim entitling the plaintiff to relief." *Id.* But the facts in this case are simple and undisputed, and the trial court, citing *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1, 955 A.2d 1082, explicitly "accepted as true" all of landowner's factual allegations. Indeed, when addressing landowner's trespass claim, the trial court stated that "no facts or circumstances, however differently alleged, would entitle Plaintiff to any legal relief."

■ ¶ 8. This claim of procedural error essentially boils down to a complaint that the trial court deprived landowner's counsel of a fair opportunity to argue the case. Though *Huminski* recognized that plaintiffs are often in a superior position to address factual deficiencies in a complaint, 173 Vt. at 519, 787 A.2d at 492, we do not read that decision as disturbing the more general notion that courts are in the best position to resolve disputed legal issues. Cf., e.g., *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."). It was therefore not error here for the trial court to address legal issues without first notifying landowner.

■ ¶ 9. Landowner next argues that the trial court erred in dismissing the trespass claim. Landowner alleges that defendant (through snow throw and water runoff) is physically invading landowner's property. Landowner is correct that a trespass does not always require personal entry onto land, since a "tangible invasion of their property" is enough to make out a prima facie case for trespass. *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 9, 184 Vt. 207, 959 A.2d 551. Thus, moving snow onto another's property might be a trespass. Further, landowner does not need to allege damages to make out a prima facie case for trespassing. See *id.* (holding that claim can be made for invasion of property without proof of any other injury). Nevertheless, in this case we hold that defendant's actions were privileged and that landowner's trespass claim was therefore properly dismissed.

■ ¶ 10. Although the bar for bringing a trespass claim is low, mere entry onto another's land does not in itself constitute a

trespass because such entry can be privileged: "Trespass involves the *unprivileged* entry on to the land in possession of another. By definition, trespass involves conduct that the trespasser has *no right* to engage in . . . ." *Wild v. Brooks*, 2004 VT 74, ¶ 17, 177 Vt. 171, 862 A.2d 225 (emphases added) (citation omitted).

■ ■ ¶ 11. Defendant argues on appeal, and the trial court held, that snowplows are engaged in privileged, lawful conduct when they are plowing roads. We agree. Route 7 is a part of the National Highway System. See 23 U.S.C. § 103(b) (describing the National Highway System). Thus, under federal law, defendant has a duty to remove snow and engage in other routine maintenance of this highway. See *id.* § 116(a). According to § 211 of the Restatement (Second) of Torts (1965):

> A duty or authority imposed or created by legislative enactment carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is reasonably necessary to such performance or exercise, if, but only if, all the requirements of the enactment are fulfilled.

Although landowner claims that this Court has never specifically adopted § 211, "we have recently looked to the Restatement of Torts for guidance on the law of trespass." *John Larkin*, 2008 VT 61, ¶ 13. We look to the Restatement here and hold that § 211 correctly identifies an area of privileged conduct that does not constitute a trespass under Vermont law.

■ ¶ 12. Applying § 211 to the facts of this case, landowner's theory of liability fails as a matter of law. Defendant's conduct is privileged, and there is no merit to landowner's argument that a trial is needed to determine whether snowplowing is "reasonably necessary" for defendant to fulfill its duty to maintain roads. Although landowner argues that other methods of snowplowing are available, defendant has discretion in exercising its police powers to choose an efficient method of removing snow from Vermont highways, even if the chosen method causes some incursion upon or incidental damage to landowner's property. Cf., e.g., *Miller v. Schoene*, 276 U.S. 272, 279-80 (1928) ("[W]here the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its

destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property.").

¶ 13. Finally, landowner argues that the trial court improperly dismissed its inverse condemnation claim. Because we find that landowner's complaint contains no facts or circumstances that would entitle landowner to relief under a theory of inverse condemnation, we affirm the judgment of the trial court.

■ ¶ 14. Landowner alleges that defendant's snowplows throw contaminated snow and water onto landowner's property and building, resulting in past and continuing injuries. Landowner claims that defendant's conduct has effected a taking of the property for public use. Landowner does not specify whether this takings claim is brought under the Fifth Amendment to the United States Constitution or under Article 2 of the Vermont Constitution. The language of both clauses is quite similar. Compare U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."), with Vt. Const. ch. I, art. 2 ("[P]rivate property ought to be subservient to public uses when necessity requires it, nevertheless, whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money."). "Because the federal and Vermont Constitutions use virtually the same test for takings review," and given that landowner has not alleged any basis for distinguishing our analysis here, we find that the analysis and result in this case are the same under both the Fifth Amendment and Article 2. *Conway v. Sorrell*, 894 F. Supp. 794, 801 n.8 (D. Vt. 1995) (citing *Hinsdale v. Vill. of Essex Junction*, 153 Vt. 618, 627, 572 A.2d 925, 930 (1990); *Timms v. State*, 139 Vt. 343, 344-45, 428 A.2d 1125, 1125-26 (1981) (per curiam)).

■ ■ ¶ 15. Landowner cites this Court's decision in *Timms* as providing strong support for finding a takings claim here. In *Timms*, the landowner's well was destroyed by the state's non-negligent salting of roads, and we held this to be a taking. However, in the nearly three decades since *Timms* was decided, it has become clear that this case is an outlier. See T. Goger, Annotation, *Salting for Snow Removal as Taking or Damaging Abutting Property for Eminent Domain Purposes*, 64 A.L.R.3d 1239 (1975) (noting that, although one other case recognized possibility of a taking for governmental snow-removal operations, *Timms* is only case in nation in which incidental damage from

road de-icing was found to be a taking). More importantly, the year after our decision in *Timms*, the United States Supreme Court highlighted the importance of "distinguish[ing] between . . . cases involving a permanent physical occupation, on the one hand, and cases involving a more temporary invasion, or government action outside the owner's property that causes consequential damages within, on the other." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982).* *In Timms*, we failed to draw this distinction when we found a taking based upon the consequential damages of lawful salting activities that the government performed on its own property. We therefore hold that *Timms* is no longer good law.

¶ 16. As the United States Court of Appeals for the Federal Circuit has noted, "not every 'invasion' of private property resulting from government activity amounts to an appropriation." *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003). Rather, "a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or

---

* *Timms* was decided before a number of significant United States Supreme Court decisions that provided further guidance on interpreting federal takings jurisprudence. While some of these cases expanded the circumstances in which a taking could be found, these cases also clarified those situations in which governmental action would not effect a taking. See, e.g., *Loretto*, 458 U.S. at 436 (regulations effect per se taking when they require property owners to suffer "permanent physical occupation"); *First English Evangelical Lutheran Church of Glendale v. L.A. County*, 482 U.S. 304, 318 (1987) (temporary takings denying landowners all use of their property "are not different in kind from permanent takings"); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834-35 (1987) (conditioning permit approval on grant of permanent public easement is a taking unless exaction substantially advances a governmental interest that would provide valid grounds for denial of permit); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027, 1031-32 (1992) (regulation that completely deprives owners of "all economically beneficial use" of property is a taking except when owner's intended use of property is restricted by background principles of nuisance and property law); *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994) (conditioning permit approval on dedication of permanent public easement is a taking unless it passes *Nollan* test and is roughly proportional "both in nature and extent to the impact of the proposed development"); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330-31 (2002) (whether development moratorium effects a taking is tested according to balancing approach, even though moratorium may destroy all economic value while in effect); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 542 (2005) (looking only at whether governmental regulation "substantially advances" legitimate state interests is not a valid takings test).

probable result of an authorized activity and not the incidental or consequential injury inflicted by the action." *Id.* at 1355 (quotation omitted); accord, e.g., *United States v. Causby*, 328 U.S. 256, 265 (1946) (taking occurs when incursion "not merely consequential," but rather "an intrusion so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it"); *Omnia Commercial Co. v. United States*, 261 U.S. 502, 510 (1923) ("[F]or consequential loss or injury resulting from lawful governmental action, the law affords no remedy.").

¶ 17. Here, landowner does not claim that defendant has authorized a permanent occupation, intrusion, or appropriation of landowner's property such that it permanently ousts landowner from possession. Rather, landowner alleges that legitimate governmental activities *outside* of landowner's property occasionally intrude upon and damage landowner's property. Any damages from such activities are purely consequential, and landowner's complaint therefore lacks any facts or circumstances that would allow for recovery under a claim of inverse condemnation. See, e.g., *Ridge Line*, 346 F.3d at 1355-56. Even when viewing the facts in the light most favorable to landowner, there is no allegation that defendant has created a permanent physical occupation of landowner's property.

¶ 18. Landowner is correct that temporary, repeated incursions can sometimes rise to the level of a taking, but only in instances where the incursions amount to the taking of an easement. See, e.g., *Ridge Line*, 346 F.3d at 1354 (recognizing that intermittent flooding of private land can in some circumstances constitute taking of an easement (citing *United States v. Dickinson*, 331 U.S. 745, 751 (1947))). Landowner makes no claim here that defendant has taken an easement by allowing snow throw to intermittently and temporarily intrude on landowner's property. Further, even if landowner were to make such a claim, courts generally find a taking of an easement only when the government requires an "onerous" dedication of property, *Lingle*, 544 U.S. at 547, such as "demand[ing] that a landowner dedicate an easement allowing public access," *id.* at 546 (citing *Nollan*, 483 U.S. at 828; *Dolan*, 512 U.S. at 379-80). When the intrusion is "limited and transient" in nature and occurs for legitimate governmental reasons, it does not amount to a taking. *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1357 (Fed. Cir. 2002)

(denying takings claim when governmental officials intermittently walked on landowner's property to conduct owl surveys); accord, e.g., *Krier v. Dell Rapids Twp.*, 2006 SD 10, ¶ 28, 709 N.W.2d 841 (upholding denial of takings claim when property invaded by dust and gravel from resurfacing of nearby road). Here, when winter road maintenance activities result in intermittent snow throw and water runoff, it is an incidental incursion only and does not represent the kind of invasion that would amount to a taking.

¶ 19. Further, the purpose of the Takings Clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). Here, landowner does not allege that it suffers an injury separate and distinct from the public as a whole: landowner is merely required to bear a similar burden as all other landowners with property fronting on plowed roads. All property owners benefit from having the roads plowed and de-iced, and all have to deal with the consequential and incidental incursions and damage that snow throw and water runoff may cause. The United States Supreme Court has held that in determining whether a taking has occurred courts must focus on "the magnitude or character of the burden" imposed and how the "burden is distributed among property owners." *Lingle*, 544 U.S. at 542 (emphases omitted). Here the burden of receiving snow throw and water runoff is distributed among all property owners who abut properly maintained highways.

¶ 20. Even if landowner's building is closer to the road than the buildings of other landowners, we do not base our decision today on the distance between the building and the road; instead, our decision is grounded in the nature and magnitude of the alleged intrusion. The analysis of whether governmental action effects a taking looks only at whether a property interest has been taken and does not take into account the type of property affected. If a taking is found, then the type of property taken is, of course, relevant to determining the proper amount of compensation. But the type of property is irrelevant to the initial step of determining whether a taking has actually occurred. See, e.g., *Loretto*, 458 U.S. at 439 ("We fail to see . . . why a physical occupation of one type of property but not another type is any less a physical occupation."). Thus, an alleged taking of a building

is evaluated the same way as an alleged taking of any other type of property, and landowner therefore has no greater claim to a taking than would any landowner whose property abuts a public highway. Indeed, in a case strikingly similar to this one, the Supreme Court of South Dakota noted that courts must avoid "confusing the damages resulting from the injury with the injury." *Krier*, 2006 SD 10, ¶ 28. In *Krier*, which involved a state constitutional provision more protective of private property than the federal Takings Clause, the landowner alleged a taking based upon road resurfacing that sent dust and gravel onto the landowner's property. The landowner had a building on his property and had therefore suffered greater property value losses than his neighbors who did not have buildings on their properties at the time of the resurfacing. The court held that, even if the landowner's losses were greater "in amount or degree" than the losses suffered by his neighbors, the injuries he suffered were still "the same as the injur[ies] to the other properties," since they all stemmed from the same governmental actions. *Id.* The court therefore held that there was no taking. *Id.*

■ ¶ 21. Inverse condemnation claims are reserved for instances in which the state should have entered into eminent domain proceedings initially. *Lingle*, 544 U.S. at 543. This is not such an instance. Defendant did not have an obligation to use its powers of eminent domain to take all of the land that might at some point be hit by snow throw and water runoff. Because landowner's complaint — even when read in the most favorable light — contains no facts or circumstances that would entitle landowner to relief under a theory of inverse condemnation, we conclude that the trial court properly dismissed landowner's inverse condemnation claim.

■ ¶ 22. In summary, although landowner presents novel theories of liability — which courts should usually be "especially" hesitant to dismiss, *Endres v. Endres*, 2006 VT 108, ¶ 4, 180 Vt. 640, 912 A.2d 975 (mem.) — we hold as a matter of law that in this case landowner fails to state a cause of action for trespass or inverse condemnation arising out of defendant's snowplowing activities. Our decision today recognizes that snow and snowplowing are facts of life in Vermont, and we do not find a cause of action

when defendant has done nothing more than protect public safety by plowing the roads that it has an ongoing legal duty to plow.

*Affirmed.*