SUPERIOR COURT

SUPERIOR COURT
Washington Unit

2020 SEP -4 P 3: 0

CIVIL DIVISION
Docket No. 171-3-19 Wncv

Vermont Journalism Trust
  Plaintiff

v.

Vermont Department of Corrections,
Mike Touchette, Commissioner of the
Vermont Department of Corrections
  Defendants

FILED

## Opinion and Order on Cross-Motions for Summary Judgment

This is a public records case in which Plaintiff the Vermont Journalism Trust

(Trust) has sought the production of certain public records from Defendant the

Vermont Department of Corrections (DOC). *See* 1 V.S.A. §§ 315–320 (Access to

Public Records Act (PRA)). The records sought relate to a specific DOC employee,

Edward Adams, who the Trust believes was subject to internal claims of sexual

harassment and may have been transferred as a result from his Superintendent

position to a lower-level job within the DOC. Following extensive prior proceedings,

the controversy has boiled down to the propriety of redactions the State has made to

8 pages of otherwise produced documents.[1] The parties have filed cross-motions for

summary judgment addressing the legal bases for those redactions.

---

[1] The State produced many previously withheld documents after Mr. Adams
assented to their release. In briefing, the State asserts that release of those
documents would have been improper under the PRA otherwise. The Court has not
so ruled, however.

1

As a general matter, the State argues that the redactions properly conceal information that is confidential, 1 V.S.A. § 317(c)(1), or privileged, *id.* § 317(c)(4), by law pursuant to 3 V.S.A. § 316 and 12 V.S.A. § 1691a. Otherwise, the State argues that the redactions properly conceal information that is subject to the PRA exemptions for personal documents, 1 V.S.A. § 317(c)(7), and information that could be used to identify one who has complained about governmental waste, fraud, or abuse of authority, *id.* § 317(c)(42). The Trust argues that there is no lawful privilege or confidentiality at issue in this case, that a compelling public interest in Mr. Adams' conduct or treatment within the DOC competes against concealment under the personal documents exemption, and that the Court should apply the waste, fraud, or abuse exemption narrowly.

The parties have stipulated to the Court's *in camera* review of the remaining disputed documents. The Court has reviewed the unredacted documents and the State's proposed redactions and now makes the following determinations.

I.      1 V.S.A. § 317(c)(1), (c)(4)

The PRA includes exemptions for information that is designated confidential by law or subject to statutory or common law privilege. 1 V.S.A. § 317(c)(1), (c)(4). The State argues that 3 V.S.A. § 316 makes the remaining records confidential by law, and 12 V.S.A. § 1691a extends a statutory privilege to them. The Court is not persuaded by either argument.

Under 3 V.S.A. § 316, "[t]he records of the Department, *except such records as the rules may properly require to be held confidential for reasons of public policy,*

2

shall be public records and shall be open to public inspection, subject to reasonable regulations as to the time and manner of inspection as may be prescribed by the Commissioner." 3 V.S.A. § 316 (emphasis added). The State argues that Department of Human Resources (DHR) Policies 5.4 and 7 are "rules" that operate to exempt certain human resources records from the PRA.

Assuming, without deciding, that § 316 reflects some delegation of authority to the Commissioner of Human Resources to exercise formal rulemaking authority to exempt certain DHR records from the PRA, the State has come forward with no such "rule" purporting to do any such thing. "Rule" is a term of art generally defined to mean an "agency statement of general applicability that implements, interprets, or prescribes law or policy and that has been adopted in the manner provided by" 3 V.S.A. §§ 836–844 of the Vermont Administrative Procedures Act (VAPA). The State points to DHR policies 5.4 and 7, but there is no dispute that neither is a VAPA rule.

To the extent that the State asserts that the Court should *defer* to its interpretation of 3 V.S.A. § 316, the Court declines. The Court generally will defer to an agency's interpretation of its own statutory authority if that interpretation is at least one among the available reasonable such interpretations. *See Athens Sch. Dist. v. Vermont State Bd. of Educ.*, 2020 VT 52, ¶ 18. But that is not the case here. The State's interpretation, effectively that "rule" means whatever DHR says, ignores the significance of the statute's use of a well-known term of art and would completely undermine the open scrutiny under VAPA to which any such rulemaking

3

would be subject and through which possible impacts on the PRA could be fully vetted. The State's broad interpretation of 3 V.S.A. § 316 is not reasonable.

Moreover, DHR policy 5.4 expressly says that the employee information to which it applies may be accessed pursuant to the PRA. *See* DHR Policy 5.4 at 4. DHR policy 7 also does not clearly purport to create any exemption from the PRA. While it speaks of confidentiality of investigative reports, it also says that they "may be released only after consultation with DHR." DHR Policy 7 at 4. These are internal operating policies of the Department. There is no indication that they were intended to operate as generally applicable exemptions to the PRA.

The State separately argues that 12 V.S.A. § 1691a establishes a statutory privilege applicable to personnel records, exempting them from the PRA. Section 1691a establishes a procedure for the production of personnel records in discovery in a civil action ensuring that the affected employee has notice and an opportunity to object prior to production. Section 1691a does not establish a general privilege of any sort and it is wholly irrelevant to the PRA. The PRA addresses the production of public records on request pursuant to statute. Section 1691a addresses discovery in a civil action. Production pursuant to the PRA and discovery in a civil action are entirely separate subject matters. *See Wesco, Inc. v. Sorrell*, 2004 VT 102, ¶ 22, 177 Vt. 287, 296. Section 1691a has no bearing on this case.

II.    1 V.S.A. § 317(c)(7), (c)(42)

The other exemptions relied upon by the State plainly apply to the disputed documents. The personal documents exemption (Exemption 7) protects information

4

revealing the "intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends." *Trombley v. Bellows Falls Union High Sch. Dist. No. 27*, 160 Vt. 101, 110 (1993) (citation omitted). Against that privacy interest, the Court weighs the "public interest in disclosure." *Kade v. Smith*, 2006 VT 44, ¶ 8, 180 Vt. 554, 557 (citation omitted).

Exemption 42 protects "information that could be used to identify a complainant who alleges that a public agency, a public employee or official . . . has engaged in a violation of law, or in waste, fraud, or abuse of authority, or in an act creating a threat to health or safety, unless the complainant consents to disclosure of his or her identity." 1 V.S.A. § 317(c)(42). While there are no reported cases further explicating Exemption 42, in the context of this case, it is reasonably clear on its face. As with all exemptions, "exceptions to disclosure are construed strictly against the custodian of the records, and we resolve any doubt in favor of disclosure." *Sawyer v. Spaulding*, 2008 VT 63, ¶ 8, 184 Vt. 545, 547.

III.     The Documents and Redactions in Controversy

The remaining pages in dispute are "bates" numbered DOC 17, 18, 19, 20, 21, 60, 61, and 64. All contain nonpublic information falling comfortably within Exemptions 7 and 42 insofar as they contain information about current or former DOC employees of a personal nature and that could be used to identify complainants of governmental waste, fraud, or abuse. With regard to Exemption 7 as a general matter, the Trust urges, and the Court acknowledges, that there are

5

legitimate public interests in disclosures of any apparent or alleged abuses of power by Mr. Adams, particularly in his supervisory capacity, as well as how the DOC may have addressed any such issues. None of the remaining pages in dispute contain any information about how the DOC may have responded to any allegations of abuse of authority against Mr. Adams.

Pages 17, 18, 19, and 20 are a memorandum from a DOC employee describing an interaction with Mr. Adams that the employee characterizes as an abuse of power. The State's proposed redactions to these pages do not conceal in any material way the substance of the alleged conduct complained about. As modified below, any redactions on these pages are intended to protect the identity of the complaining employee and any related personal information of a private nature. The public interest does not weigh in favor of greater disclosure.

Page 21 contains two e-mails from the same complaining employee. The first is evidently a short "cover letter" to the underlying complaint, and the second is a minor clarification to the text of the complaint. As modified below, any redactions on this page are intended to protect the identity of the complaining employee, and the public interest does not weigh in favor of greater disclosure.

Pages 60 and 61 are a letter from Mr. Adams to a DOC employee obviously under his supervision pointing out certain performance deficiencies and possible repercussions if they are not addressed. These pages include no complaint against Adams or anyone else. They include highly personal information about the

6

employee's work performance for which privacy interests are high and for which there is no apparent public interest at issue.

Page 64 provides background information about a former DOC employee, including some circumstances regarding the termination of that person's employment. The Trust is aware that this page includes an allegation by the terminated employee to the effect that another DOC employee repeatedly, but unsuccessfully, sought to "date" the terminated employee prior to termination. The Trust incorrectly infers that Mr. Adams was the DOC employee pursuing a romantic relationship. Page 64 reflects no such complaint against Mr. Adams. Otherwise, it includes detailed information of a highly personal nature regarding the ex-employee about which there is no apparent public interest.

With regard to all these documents, the State's proposed redactions, while obviously motivated by the considerations described above, are somewhat broader than necessary. With the benefit of the parties' briefing, and having reviewed the disputed documents in camera, the Court now modifies the State's proposed redactions, with instructions to the State to so limit them, as follows:

### DOC 0017

Remove the following redactions:

(1) In the paragraph beginning, "Upon Supt. Adams arrival," remove all redactions.
(2) In the immediately following paragraph, which is completely redacted, remove all redactions.
(3) In the paragraph beginning, "Supt. Adams then appeared," remove redaction of the two words following "Desk that" in line 2. In line 3, remove redaction of the two words preceding "was under." In line 4, remove redaction of the two words preceding "placed his hand." In line 5, remove redaction of the two words

7

preceding "then replaced." In line 6, remove redaction of the two words following "inmates name."

    (4) In the paragraph beginning, "Supt. Adams then looked at," remove all redactions.

    (5) In the paragraph beginning, "Supt. Adams then led," remove all redactions in line 1. In line 2, remove all redactions other than name of officer other than Adams. Remove all redactions in lines 3 and 4. In line 5, remove redaction of first 9 words. In the last line of this paragraph, remove all redactions.

### DOC 0018

Remove the following redactions:

    (1) Remove all redactions to the two lines at the top of this page (which continue the paragraph from the previous page).

    (2) In the first full paragraph (paragraph 1) on this page, remove all redactions to the first three lines. In line 4, remove redaction of first 9 words. In line 5, remove redaction of last 2 words. In line 6, remove all redactions.

    (3) In the second full paragraph (paragraph 2), in line 6, remove redaction of last 4 words (those following parenthesis). Remove all redactions to lines 7, 8, 9, 10, 11, and 12. On line 13, remove redaction of first 9 words (leading up to quotation mark).

    (4) In paragraph 3, remove all redactions to line 1.

    (5) In paragraph 4, line 4, remove redaction of 2 words preceding "believes in."

### DOC 0019

Remove the following redactions:

    (1) In paragraph 1 at the top of the page, remove redaction to last 9 words in line 5. Remove all redactions to line 6.

    (2) In paragraph 2, remove redaction of two words following "while looking at" in line 2, as well as two words preceding and one word following "shook." In line 4, remove all redactions.

    (3) In paragraph 4, line 1, remove redactions preceding "interaction with." In line 1, also remove redaction preceding "found Supt." In line 2, remove all redactions. In line 3, remove redaction of words between "for" and "nor."

    (4) Remove all redactions to the line at the top of the numbered list ending with a colon. In item 1, remove all redactions to the complete parenthetical. In item 2, remove all redactions to the complete parenthetical. In item 3, remove redactions to the last 7 words of line 2 and the first 5 words of line 3. In item 4, remove all redactions to the complete parenthetical. In item 5, remove redaction of last 9 words of line 2.

8

### DOC 0020

Remove the following redactions:

(1) In item 6, remove all redactions to the complete parenthetical. Remove all redactions to item 7.

(2) In paragraph beginning "Based on Supt.," remove all redactions.

### DOC 0021

Remove the following redactions:

(1) In paragraph beginning "Addendum – NOTE," remove all redactions.

(2) In paragraph beginning, "I am submitting," remove all redactions.

### DOC 0060

No changes.

### DOC 0061

No changes.

### DOC 0064

Remove the following redactions:

(1) In the second paragraph below the first numbered list, following the paragraph that is entirely within quotation marks, remove redactions in line 2 to words 4, 5, 6, 7 and 11, 12, and 14, 15, 16 (avoiding words indicating names, genders, or ID numbers). In line 3, remove redactions to words 1, 2, 3 and 5 and 11, 12, 13 and 15, 16, 17. In line 4, remove all redactions except two indicating gender.

(2) In the first paragraph below the second numbered list, in line 1, remove redactions to words 2, 3, 4 and 6, 7, 8, 9 and 11, 12, 13, 14, 15.

Any redactions proposed by the State that are not instructed to be removed as set forth above shall be retained. The Court provides these instructions, rather than performing the redactions itself, to ensure that the State has a fair

9

opportunity to seek any desired review prior to the release of any information it continues to consider nonpublic.

## Conclusion

For the foregoing reasons, the parties' cross-motions for summary judgment are granted in part and denied in part. The State shall promptly alter its redactions to the remaining disputed documents, as ordered above, and produce those documents within 14 days. To the extent the Trust seeks attorneys' fees under 1 V.S.A. § 319(d), a well-supported claim for fees is due within 30 days of the production.

Dated this 4ᵗʰ day of September, 2020, at Montpelier, Vermont.

Timothy B. Tomasi
Superior Court Judge

10