2008 VT 61

### John Larkin, Inc. and Larkin Family Partnership v. J. Edward Marceau, Jr., D.D.S.

[959 A.2d 551]

No. 07-176

Present: Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Davenport, Supr. J., Specially Assigned

Opinion Filed May 2, 2008

Motion for Reargument Denied June 3, 2008

*Christina A. Jensen* of *Lisman, Webster & Leckerling, P.C.*, Burlington, for Plaintiffs-Appellants.

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Defendant-Appellee.

¶ 1. **Johnson, J.** Real estate developers, who sued a neighboring landowner for trespass based on the neighbor's spraying of pesticides in his apple orchard, appeal the superior court's decision rejecting their trespass theory. Because the developers failed to make a showing sufficient to survive the neighbor's motion for summary judgment, we affirm the court's judgment in favor of the neighbor.

¶ 2. Plaintiffs John Larkin, Inc. and Larkin Family Partnership (Larkin) own undeveloped land adjoining that of defendant J. Edward Marceau, Jr., who operates an apple orchard on his property. Larkin purchased the property from Marceau's former spouse in 2001 for the purpose of building a residential development. To increase the density of the proposed development, Larkin later obtained a transfer of the development rights from Marceau's property and another adjoining parcel of land.

¶ 3. In 2003 and 2004, Larkin submitted to the District 4 Environmental Commission an application for a proposed 122-unit residential development with minimum setbacks along the Marceau boundary. Larkin requested partial findings from the commission on whether the proposed project would satisfy Act 250 criteria concerning the preservation of agricultural soils. Concerned about potential conflict over inconsistent uses, Marceau asked the commission to impose a buffer zone that would restrict residential use of the Larkin property adjoining his land. In September 2005, following three days of hearing, the commission determined, among other things, that Larkin had failed to satisfy two Act 250 criteria. First, Larkin had not demonstrated that

there was no other use of the site that would have less impact on agricultural soils while still providing a reasonable rate of return on the fair market value of the property. Second, Larkin had not demonstrated that the project maximized the density of the development in a manner that increased the potential for agricultural uses. The commission determined that this latter criterion was not satisfied through transfer of the development rights from adjoining parcels of land, including the Marceau property.

¶ 4. As for the Act 250 criterion related to the instant lawsuit — whether the proposed project would significantly interfere with agricultural use on adjoining lands — the commission acknowledged the Agency of Agriculture's recommendation of a 250-foot buffer between the apple orchard and the proposed residential use, and expressed concerns that the minimum setbacks for the proposed project might result in conflicts between residents of the development and the orchard, with the potential for disruption of the current farming use on the Marceau property. Nevertheless, the commission explicitly stated that it had not heard enough evidence to determine whether the proposed project satisfied that criterion. Citing the project's failure to satisfy the two other criteria noted above, the commission reserved judgment on this latter criterion until Larkin submitted an amended proposal. Larkin neither appealed the commission's decision nor filed an amended application.

¶ 5. In March 2005, following the commission's rejection of the proposed project, Larkin filed suit against Marceau, seeking injunctive and compensatory relief based on Marceau's spraying of pesticides in his orchard. The lawsuit sounded in trespass, with Larkin alleging that winds carried detectable levels of pesticides onto its property, thereby damaging the property. In his answer to the complaint, Marceau asserted, among other things, that Larkin had failed to state a claim upon which relief could be granted, that the claims were not ripe, and that the claims were barred by Vermont's right-to-farm law, 12 V.S.A. §§ 5751-5754, which establishes a rebuttable presumption that agricultural activities are not a nuisance. Id. § 5753(a)(1). The superior court initially dismissed the trespass claim, but later allowed it to proceed beyond the pleadings stage.

¶ 6. In January 2007, after discovery was closed, Marceau moved for summary judgment, arguing that Larkin was in fact making a nuisance claim but couching the complaint in terms of

trespass to circumvent the right-to-farm law. Larkin opposed the motion and filed a cross-motion for summary judgment, arguing that Marceau, by seeking a buffer zone between the parties' properties, had effectively ousted Larkin from part of its property. Concluding that Larkin's suit actually sounded in nuisance rather than trespass, the superior court stated that it would not endorse the fiction that Marceau's pesticides occupied Larkin's land, which would allow Larkin to evade the Legislature's plain intent to offer heightened protection to agricultural activities with respect to claims of this nature. The court declined to grant either party summary judgment, however, stating that the right-to-farm law did not necessarily preclude Larkin's complaint from surviving a motion for summary judgment insofar as the law established only a rebuttable presumption that no nuisance existed. The parties later stipulated to dismissal of Larkin's claims to the extent that they sounded in nuisance, and the superior court entered a final judgment against Larkin.

¶ 7. On appeal, Larkin argues that: (1) the superior court erred by recharacterizing its trespass action as a nuisance action subject to the right-to-farm law and thus effectively dismissing its trespass claim; (2) the right-to-farm law does not insulate farmers from liability for trespass, regardless of the nature of the trespass; and (3) the right-to-farm law is an unconstitutional taking to the extent that it permits farmers to deposit pesticides on neighbors' lands in a manner that precludes use of those lands. In response, Marceau argues that Larkin's claims are actually nuisance claims subject to the right-to-farm law, and that Larkin cannot avoid that law by alleging trespass. He also argues that Larkin failed to raise his constitutional claims before the superior court, and that, in any event, a private citizen cannot be held liable for an alleged taking that has not yet occurred and would result from conditions imposed by state regulators beyond his control. We conclude that Larkin failed to make a showing sufficient to survive summary judgment on its trespass claim, and thus affirm the superior court's judgment in favor of Marceau.

¶ 8. The parties frame the primary issue as whether the deposit of airborne particulates on land may sound in trespass rather than nuisance. They both acknowledge the accepted distinction "that trespass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it." W. Keeton et al.,

Prosser and Keeton on the Law of Torts § 87, at 622 (5th ed. 1984). Compare Restatement (Second) of Torts § 158 cmt. c, at 277 (1965) (describing trespass as an "intrusion" invading "the possessor's interest in the exclusive possession of his land" (internal quotations omitted)) with Restatement (Second) of Torts § 821D cmt. d, at 101 (1979) (defining nuisance as "an interference with the interest in the private use and enjoyment of the land [that] does not require interference with the possession," and distinguishing trespass as "an invasion of the interest in the exclusive possession of land"). Larkin claims that Marceau's application of pesticides that settle onto its property effectively ousted it from the property. Marceau counters that Larkin is actually asserting a loss in the use and enjoyment of its property, which is a claim sounding in nuisance.

¶ 9. Traditionally, courts held that although a personal entry is unnecessary for trespass to take place, a defendant's act "must cause an invasion of the plaintiff's property by some tangible matter." See *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528, 1539 (D. Kan. 1990) (citing cases); see also *Adams v. Cleveland-Cliffs Iron Co.*, 602 N.W.2d 215, 219 (Mich. Ct. App. 1999) (citing cases); 1 D. Dobbs, The Law of Torts § 50, at 96 (2001) ("The law of nuisance deals with indirect or intangible interference with an owner's use and enjoyment of land, while trespass deals with direct and tangible interferences with the right to exclusive possession of land."); Keeton, *supra*, § 13, at 71 ("While it is generally assumed and held that a personal entry is unnecessary for a trespass, the defendant's act must result in an invasion of tangible matter."); cf. *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552, 762 A.2d 808, 810 (2000) (mem.) ("Even assuming water flow is an indirect invasion of property, and therefore not a trespass, interference with surface water may constitute a nuisance."). Plaintiffs showing a direct and tangible invasion of their property may obtain injunctive relief and at least nominal damages without proof of any other injury. *Adams*, 602 N.W.2d at 219.

¶ 10. On the other hand, plaintiffs claiming a nuisance have to demonstrate actual and substantial injury. *Id*. Under this traditional view, the intrusion of smoke, gas, noise, or other invisible particles onto another's property is not actionable as a trespass, but only as a private nuisance. Keeton, *supra*, § 13, at 71; see Dobbs, *supra*, § 53, at 105 (explaining that courts have been reluctant to allow trespass actions based on the invasion of

microscopic or intangible particles because trespass "provided no mechanism for limiting liability to serious or substantial invasions").

¶ 11. Some courts eventually adopted a so-called "modern" theory of trespass that permits actions based on the invasion of intangible airborne particulates. Compare *Maddy*, 737 F. Supp. at 1539-40 (explaining and adopting "modern trend" of trespass) with *Adams*, 602 N.W.2d at 220-21 (explaining and rejecting "modern view" of trespass). Under this modern theory, invasions of intangible matter are actionable in trespass only if they cause substantial damage to the plaintiff's property, sufficient to be considered an infringement on the plaintiff's right to exclusive possession of the property. See *Mock v. Potlatch Corp.*, 786 F. Supp. 1545, 1550-51 (D. Idaho 1992) (summarizing modern trend). Hence, the modern view "departs from traditional trespass rules by refusing to infer damages as a matter of law" with respect to intangible invasions of property, as would be the case with direct, tangible invasions of property. *Maddy*, 737 F. Supp. at 1539; see *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 530 (Ala. 1979) (explaining that invasion of polluting particulates is actionable as trespass only if invasion interferes with exclusive possessory interest of plaintiff's property by causing substantial damage to property); *Bradley v. Am. Smelting & Ref. Co.*, 709 P.2d 782, 791 (Wash. 1985) (en banc) (explaining that trespass from airborne particles cannot occur unless plaintiff has suffered actual and substantial damages).

¶ 12. At least one court has rejected this modern view and held that recovery for trespass is available "only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Adams*, 602 N.W.2d at 222. In so holding, the Michigan court reasoned that requiring a showing of substantial damage for a trespass of intangible matter would "conflate[] nuisance with trespass to the point of rendering it difficult to delineate the difference between the two theories of recovery" and would weaken property owners' automatic right of exclusion in traditional trespass cases involving invasions of tangible objects. *Id.* at 221; see Keeton, *supra*, § 13, at 72 ("The historical requirement of an intrusion by a person or some tangible thing seems the sounder way to go about protecting the exclusive right to the use of property.").

¶ 13. In considering these alternatives, we note that Vermont law is silent on this issue, although we have recently looked to the Restatement of Torts for guidance on the law of trespass and nuisance. See, e.g., *Harris v. Carbonneau*, 165 Vt. 433, 437, 685 A.2d 296, 299 (1996) (citing Restatement § 158 in defining liability for trespass); *Canton*, 171 Vt. at 552, 762 A.2d at 810 (citing Restatement §§ 158, 821D, and 833 in defining liability for trespass and comparing nuisance). But neither the Restatement provisions nor their accompanying commentaries address the thorny question of whether the dispersion of particulate matter on property may be actionable as a trespass in addition to a nuisance. The Restatement does note, however, that the two actions are not necessarily exclusive and may overlap. Restatement (Second) of Torts § 821D cmt. e, at 102; see *Bradley*, 709 P.2d at 790 (noting that "remedies of trespass and nuisance are not necessarily mutually exclusive") (quotations omitted).

¶ 14. We recognize that the dispersion of airborne particles, whatever their nature, may technically be considered an entry onto land creating liability for trespass irrespective of whether any damage was caused. Because the ambient environment always contains particulate matter from many sources, such a technical reading of trespass would subject countless persons and entities to automatic liability for trespass absent any demonstrated injury. Plainly, that cannot be the law — and, as far as we can tell, no jurisdiction has so held. The question, then, is whether the physical entry onto land of intangible airborne particulates can ever be a trespass, or whether such an invasion may be actionable only as a nuisance. Because Larkin has failed to demonstrate any impact on its property from Marceau's pesticides, we find it unnecessary in this case to adopt a hard-line position that the dispersion of airborne particulates on property may never be actionable as a trespass, irrespective of the nature of the invasion or the right invaded. We leave for another day the question of whether the intrusion of airborne particulates may ever be a trespass, and, if so, what impact is required to sustain such an action.

¶ 15. Here, absent a demonstrated physical impact on Larkin's property resulting from the airborne particulates, the superior court did not err in granting summary judgment to Marceau. When particles enter the ambient environment without any demonstrated impact on the land, we fail to see how a

trespass has occurred. In such a case, there is no ouster from the land, as Larkin claims here, and no interference with the landowner's right to exclusive possession of the land. Hence, under such circumstances, the landowner has no action in trespass. In a traditional trespass action, the right to exclusive possession of property may not depend on an analysis of the impact on the use of the land, but we cannot presume an intrusion on that right in situations where the plaintiff fails to show that an intangible invasion of airborne particulates had a demonstrated physical impact.

¶ 16. Despite having an opportunity during discovery to make out a case of trespass under the modern view examining the nature of the right invaded, Larkin failed to make any showing whatsoever that the presumed dispersion of detectable levels of pesticides onto its property from Marceau's orchard deprived it of exclusive possession of its property or had any other impact on the property. Larkin makes only a bald assertion that it has been ousted from its property because of the presumed detectable level of pesticides landing on the property, and because Marceau requested, and the Agency of Agriculture recommended, that there be a buffer zone to avoid any potential conflict over use of the adjoining properties. Larkin neither conducted depositions nor offered any expert testimony. Nor did Larkin proffer evidence indicating the extent of the dispersion of pesticides on its property or any potential safety or health concerns related to the pesticide use. Nor did the commission reject Larkin's project or restrict the use of Larkin's property based on any required buffer zone. In short, Larkin's trespass claim relies exclusively on the fact that Marceau wanted a buffer zone to reduce the potential conflict of uses. That fact does not support Larkin's claim of an ouster or its trespass action.

¶ 17. Without question, there are situations in which both trespass and nuisance — two distinct actions that are not mutually exclusive — will be cognizable in the same lawsuit. This is not such a case, however.

¶ 18. Given our affirmance of the trial court's order rejecting Larkin's trespass action, and the parties' stipulation for dismissal of the nuisance action, we need not address Larkin's constitutional arguments.

*Affirmed.*