*Rock of Ages Corp. v. Bernier*, No. 68-2-14 Wncv (Teachout, J., April 22, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 68-2-14 Wncv** |

**ROCK OF AGES CORPORATION and**
**NORTH EAST MATERIALS GROUP, LLC**
    **Plaintiffs**


    **v.**


**LORI BERNIER AND MARC BERNIER**
    **Defendants**


### DECISION
### Defendants' Motion for Summary Judgment, and
### Defendants' Motion to Strike

Oral argument was heard on the above motions on February 17, 2015. Plaintiffs were represented by Attorney Alan P. Biederman. Defendants were represented by Attorney Daniel P. Richardson.

Defendants Lori and Marc Bernier own residential property in Barre Town. A provision in their deed prohibits them from deeming Plaintiff Rock of Ages' industrial and quarrying pursuits "a hindrance or nuisance to their possession and enjoyment" of their land. In the complaint, Rock of Ages[1] claimed that the Berniers are in violation of this deed restriction by complaining about noise, dust, and truck traffic to "various authorities," including the Town of Barre, the State of Vermont, and bodies conducting permit proceedings related to Rock of Ages' operations. Based on the alleged violations, Rock of Ages filed suit seeking a declaration of the parties' respective rights and obligations under the deed provision. It also sought compensatory damages for the violations alleged, and injunctive relief to prevent further such violations.

The Berniers responded with a counterclaim also seeking declaratory relief on the scope and validity of the deed provision. In addition they claim that the complaint is an improper attempt by Rock of Ages to chill their rights to free speech and public participation, and that as such it is both an abuse of process and a violation of 12 V.S.A. § 1041, Vermont's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. They also claim slander of title. They seek declaratory and injunctive relief, compensatory and special damages, and attorney fees.

The Berniers filed a Motion for Summary Judgment on the meaning of the deed provision and a Motion to Strike the complaint as a SLAPP suit. By the time of the oral argument on these

---

[1] Plaintiff North East Materials Group is Rock of Ages' lessee. It conducts or anticipates conducting certain quarrying and industrial activities, operates an asphalt plant, and crushes waste rock. For purposes of this decision, there is no need to distinguish between Plaintiffs. For ease of reference, the court will refer to Rock of Ages alone.

motions, the case had evolved. At the hearing, Rock of Ages limited its claim to one seeking declaratory relief on the scope of the deed provision and clarified that it is no longer seeking compensatory damages. The Berniers accepted that the complaint—so limited—is not a SLAPP suit within the contemplation of 12 V.S.A. § 1041. They argued, however, that up until the hearing, the complaint was not so limited.

Subsequent to the oral argument, Plaintiff has filed a Motion to Amend Complaint, seeking to formally amend the complaint to one for declaratory and injunctive relief only. The time for response has not yet ended. The filing of the Motion to Amend does not change the need for legal ruling on the pending motions.

*The deed provision*

In this suit, both parties seek a declaration of the meaning of the deed language at the heart of this case. The Berniers argue that the provision embeds into the chain of title a binding version of the "coming-to-the-nuisance" doctrine: that someone who purchases real estate knowing that it may be affected by activities of a neighboring owner that could be the basis of a nuisance claim cannot thereafter assert a valid nuisance claim. See Restatement (Second) of Torts § 840D ("The fact that the plaintiff has acquired or improved his land after a nuisance interfering with it has come into existence is not in itself sufficient to bar his action, but it is a factor to be considered in determining whether the nuisance is actionable."). The Berniers claim that the provision means only that they are barred from private claims against Rock of Ages sounding in nuisance. Rock of Ages contends that the provision prohibits the Berniers from engaging in a range of activities broader than simply asserting a private cause of action for nuisance, although Rock of Ages no longer contends that it prevents them from participating in public permitting proceedings.

The provision itself reads as follows:

By acceptance of this deed, [1] the Grantees acknowledge that they are familiar with the quarrying and industrial operations of the Grantor and [2] take title to this property with reservation on the part of the Grantor and its successors and assigns that it will continue and may enlarge its quarrying and industrial activities on its remaining lands in the vicinity of the land and premises described above, and [3] that such activities shall not be deemed by the Grantees or their successors and assigns, a hindrance or nuisance to their possession and enjoyment of the land and premises as described above.

Construction of the paragraph shows three operative statements:

(1) Grantees acknowledge that they know about Rock of Ages' quarrying and industrial operations;

(2) Grantees take title subject to an interest reserved by Rock of Ages for itself and its successors and assigns as owners of nearby property; and

(3) Grantees agree for themselves and their successors and assigns not to "deem" existing or enlarged quarrying and industrial activities a hindrance or nuisance with respect to the purchased property.

2

The first clause appears to be a predicate for application of the "coming to the nuisance doctrine": it sets the stage for Rock of Ages to show that no grantee would have a basis for asserting a nuisance claim for the identified activities because of their knowledge in "coming to" any nuisance resulting from quarrying and industrial operations. This statement does not by itself create any particular rights or obligations on the part of any party, but is merely a statement.

The second clause utilizes the language of property conveyancing: it reserves from the conveyance a property interest in the parcel conveyed, and identifies the property that carries the benefit of the reserved right as well as the fact that the reserved right runs with the land to benefit Rock of Ages' successors and assigns. The interest reserved is not an ownership interest, but an easement: the right to affect Grantees' property by imposing on it effects from quarrying and industrial operations, which might include such effects as noise, dust, traffic, and the like.

The third clause utilizes the language of contract: the Grantees agree to give up a right that they would otherwise have. It is a right related to their use and enjoyment of the purchased property, and they agree to give it up for themselves and their successors and assigns. This is the language of contract, but because the right is given up not only for the Grantees personally but also on behalf of their successors and assigns, it is a covenant obligation that runs with the land.

The issue in the case is, what is the right that is given up in the covenant? The right is defined as "deeming" quarrying and industrial activities (then existing and to be expanded) "a hindrance or nuisance to their possession and enjoyment of the land."

Rock of Ages argues that this language restricts Defendants more broadly than preventing private nuisance suits, and that this makes sense because Rock of Ages was seeking to protect itself from having any trouble of any kind from the Berniers as neighboring property owners, such as complaints to the police or phone calls to regulatory agencies to alert them about possible violations of land use or other regulations.

A covenant is a contract, so the question becomes, would such an interpretation meet the standards necessary to make a contract enforceable? See *Evans v. Forte*, 135 Vt. 306, 310 (1977) ("Vagueness, indefiniteness and uncertainty of expression as to any of the essential terms of an agreement have been held to preclude the creation of an enforceable contract. 1 Corbin on Contracts § 95 (1963))". As this lawsuit illustrates, interpreting the provision in this manner carries the inherent problem that it is virtually impossible for the parties to have a clear definition of what is or is not prohibited sufficient to support enforcement. Rock of Ages asks the court to create such a definition, but to do so, the court would be creating contract terms not agreed to by the parties themselves. If the parties to the original conveyance intended the covenant to encompass a broad range of activities, the terms of the covenant could have been so defined, and should have been so defined in order to create an enforceable covenant.

The provision as a whole is closely tied to the long-recognized legal doctrine of nuisance, and more specifically to the "coming to the nuisance" doctrine. The third clause, the covenant clause, is grounded in the language of nuisance law: the "deeming" that is prohibited is tied

3

directly to a "hindrance or nuisance to their possession and enjoyment of the land." See, e.g., *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 8, 184 Vt. 207 ("[T]respass is an invasion of the plaintiff's interest in the exclusive *possession* of his land, while nuisance is an interference with his use and *enjoyment* of it." (quoting W. Keeton et al., Prosser and Keeton on the Law of Torts § 87, at 622 (5th ed. 1984)) (emphasis added); *State v. Morse*, 84 Vt. 387, 393 (1911) ("It is a part of the great social compact to which every person is a party—a fundamental and essential principle in every civilized community—that every person yields a portion of his right of absolute dominion and use of his own property in recognition of an obedience to the rights of others, so that others may also enjoy their property without unreasonable hurt or *hinderance*." (quoting Wood, Nuisances 3d, § 1) (emphasis added)); *State v. Smith*, 54 Vt. 403, 412 (1882) ("It is difficult, and perhaps impossible, to establish any general rule upon the subject; but it must be shown, to constitute an act like the one complained of—a public nuisance, that the travelling public were, to some extent, impeded, *hindered*, or obstructed, in the use of the highway for the purpose of travelling over it." (emphasis added)).

The introductory clause establishes the knowledge of nuisance-like activities, the predicate for application of the coming-to-the-nuisance doctrine. The context is that all terms are included in a single paragraph—even a single sentence—that defines rights and obligations related to nuisance law. In this tight context, the right that is given up in the covenant in the third clause is the right to assert a claim sounding in nuisance against Rock of Ages based on the defined activities, which otherwise could provide a basis for such a claim.

The provision as a whole describes initially that its subject matter, and hence its scope, is the coming-to-the-nuisance doctrine. It then addresses this in two ways that complement each other: Rock of Ages reserves an easement so that it can continue to affect the conveyed parcel by carrying on its defined activities, and then the Grantees agree to waive any right they would otherwise hold to assert a nuisance claim against Rock of Ages for the defined activities. Any effort to interpret the third clause as giving Rock of Ages a right to prevent a broader range of activities has two problems: such an interpretation is highly strained when the structure and language of the deed provision is analyzed and read as a coherent whole, and such an interpretation purports to create a contract right that does not meet the standards required for an enforceable contract.

For the foregoing reasons, the Court declares that the deed provision:
(1) establishes that Rock of Ages holds an easement on the Berniers' property to affect it by carrying on quarrying and industrial operations on its retained land, and
(2) precludes the Berniers and their successors from pursuing a legal cause of action sounding in nuisance against Rock of Ages and its successors based on quarrying and industrial operations on its retained land.
The covenant does not prevent the Berniers from engaging in any other particular forms of conduct or speech.

Based on the foregoing, the Berniers' Motion for Summary Judgment is granted.

*The SLAPP Motion to Strike*

Vermont's anti-SLAPP statute is intended to provide protection against "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and freedom to petition government for the redress of grievances." 2005, No. 134 (Adj. Sess.), § 1(1). The statute authorizes a defendant who was sued due to or in anticipation of the exercise of those rights to file a special motion to strike the lawsuit at the outset of the case. 12 V.S.A. § 1041(a). If such a motion is filed, the court must grant it unless the plaintiff proves that:

(A) the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law; and

(B) the defendant's acts caused actual injury to the plaintiff.

*Id.* § 1041(e)(1). If the plaintiff cannot make such a showing, the court grants the motion and the defendant is entitled to attorney fees and costs. *Id.* § 1041(f)(1). If the motion was frivolous, the plaintiff is entitled to fees and costs. *Id.*

The statute broadly protects:

(1) any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement concerning an issue of public interest made in a public forum or a place open to the public; or

(4) any other statement or conduct concerning a public issue or an issue of public interest which furthers the exercise of the constitutional right of freedom of speech or the constitutional right to petition the government for redress of grievances.

12 V.S.A. § 1041(i).

In this case, both parties sought a declaration of the scope of the deed provision at issue. It is not clear how the statute should apply in a case in which the plaintiff has a legitimate legal claim that is mixed with a possible impermissible claim under the statute. Because Rock of Ages has now restricted its complaint to its declaratory relief claim and the Berniers concede that the declaratory claim is outside the scope of § 1041, the court does not need to address the issue. However, permitting a plaintiff who initiates a lawsuit in violation of § 1041 to fully avoid the consequences of a motion to strike by withdrawing such claims when provoked by the motion

would undermine the statute's remedial purpose.  See *Raynes v. Rogers*, 2008 VT 52, ¶ 15, 183 Vt. 513 ("As we have stressed in the past, remedial statutes . . . must be liberally construed to 'suppress the evil and advance the remedy intended by the Legislature.'" (citation omitted)).

In this case, Rock of Ages initially sought damages and injunctive relief based on conduct by the Berniers that is within the protected scope of § 1041 and, by Rock of Ages' own admission, not within the scope of the covenant—their participation in permit proceedings such as Act 250.  Withdrawing all such claims renders the Berniers' Motion to Strike moot for purposes of dismissing the complaint or a portion of its claims.  It does not alter their entitlement to attorney fees and costs pursuant to 12 V.S.A. § 1041(f)(1).

The Motion to Strike thus is granted to that extent.  The Berniers are entitled to fees and costs in an amount reasonably allocable to the withdrawn claims that violated § 1041.

*Other claims*

There were indications at the hearing on the motions that the Berniers intended to withdraw, or at least would be inclined to withdraw, their claims of abuse of process and slander of title now that Rock of Ages' claim is limited to seeking declaratory relief.  The abuse of process claim is the common law analog to the now-resolved anti-SLAPP claim.  The slander of title claim requires proof of special damages that so far have not been clearly alleged.  The court understands that the Berniers intended to withdraw these claims and will consider them dismissed unless notified otherwise within fifteen days.

**ORDER**

For the foregoing reasons,

1.  The Berniers' Motion for Summary Judgment is *granted*;
2.  The Motion to Strike is *granted*;
3.  The Berniers' abuse of process and slander of title claims will be dismissed unless the Berniers notify the court within 15 days that they are not withdrawn; and
4.  A hearing will be scheduled on attorneys' fees and costs.  It will be scheduled for one hour unless the attorneys notify the clerk that a different amount of time is needed.

Dated at Montpelier, Vermont this _____ day of April 2015.

_____
Mary Miles Teachout
Superior Judge