Filed 11/21/25

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 422-6-20 Cncv

|  |  |
|---|---|
| Marty Steinhausen and Karinda J. Stoakes, <br>     Plaintiffs <br><br> v. <br><br> Christine J. Turner, <br>     Defendant | DECISION AND ORDER |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This declaratory judgment action arises out of a long-standing, and unfortunately at times contentious, dispute between neighboring property owners in Milton, Vermont over the location of an easement on one of the properties. Plaintiffs Marty Steinhausen and Karinda J. Stoakes filed suit against their neighbor, Defendant Christine J. Turner, alleging that Turner was improperly interfering with their right to access their property using a right-of-way, which was originally established by a prior landowner in a 1916 Warranty Deed. They have asserted claims for trespass, nuisance, quiet title, easement by prescription, as well for a declaration of the parties' rights with regard to the easement. Defendant Turner disagrees with Plaintiffs' construction of the easement and contends it may not be used as a means of access to their property. She filed a counterclaim for trespass, alleging that Plaintiffs have caused damage to her property through their use of the right-of-way and by removing plants, rocks, and soil to create a driveway. On February 19, 2021, following a hearing, the Court issued a preliminary injunction preserving the status quo by allowing Plaintiffs to use the right-of-way through access in one direction, and providing that neither party shall interfere with the other parties' use and enjoyment of the right-of-way or their own property.[1]

A full-day bench trial was held on August 26, 2025. Plaintiffs appeared in person and were represented by Attorney Brian Hehir, Esq. Defendant was present and was represented by Attorney Matthew Glitman, Esq. The Court heard testimony from the parties, other fact witnesses, and the parties' expert witnesses, and admitted numerous exhibits by stipulation of the parties. The Court allowed the parties until September 30, 2025 to submit post-hearing memoranda. The Court then took the matter under advisement for determination. In consideration of the credible evidence presented, testimony provided, and admitted exhibits, the Court now issues the following Findings of Fact, Conclusions of Law, and Order.

---

[1] The terms "easement" and "right-of-way" are typically used interchangeably, as the Court does here. *See Gladchun v. Eramo*, 2023 VT 5 ¶ 4, n.3, 217 Vt. 481.

<u>Findings of Fact</u>

Based on the credible evidence presented, the Court finds the following relevant facts established by a preponderance of the evidence.

Plaintiffs Marty Steinhausen and Karinda J. Stoakes are the owners of property located at 2 Main Street (formerly 2-4 River Street) in Milton, Vermont. They purchased the property in November 2017 from the previous owner, the Estate of Armand Brisson. *See* Ex. 29. The property is bordered by Route 7, Main Street, and Ice House Road, and shares a boundary on the eastern side with Defendant Christine Turner. *See, e.g.*, Ex. 22, 31. Based on the poor condition of the existing structure on the property, Plaintiffs needed to perform a total renovation. In 2019, they moved into the building, which has commercial use on the ground floor and is residential on the upper two levels. The property slopes up such that the entrance to the residence is on grade with the second-floor level. Plaintiffs park their vehicles in the back of the property, using their right-of-way located on Defendant's land. In 2023, Plaintiffs moved from the property to another home in Milton. They currently rent out the property; the tenants living there operate the restaurant on the ground floor and live in the apartment in the second and third floors.

Defendant Christine Turner is the owner of the property at 6 Main Street in Milton. She and her then-husband bought the property in October 1997 and moved in soon thereafter. *See* Ex. 26. In 2001, they opened a restaurant business in the property. In 2006, Ms. Turner became the sole owner and moved back to live in the home. Ms. Turner accesses her property using the driveway that is within the disputed right-of-way, which goes along the west side of her property from Main Street to a now paved parking area in the back of the home. She also parks her vehicles in the area in order to access the front entrance to her home.

<u>History of the Property and Relevant Deeds</u>.

Both Plaintiffs' and Defendant's properties were initially held as a single parcel of land by Kate Clark. Apparently, the land had been in the Clark family for some time. In 1916, Ms. Clark granted a portion of the land (which is now Ms. Turner's property) to the Town of Milton to be used for public purposes (the "Clark Memorial property"). *See* Exs. 24, A. The deed describes the southern border of the property as running along Main Street "Two Hundred Three Feet to the center of a large brick driveway post" and then the western border as running from that point "northerly One Hundred Seventy-four Feet and seven inches in a line parallel to said [Lucia B.] Powell's west line to a large brick driveway post." *Id*. In her conveyance, Ms. Clark reserved for herself, heirs, and assigns an easement and:

> full right of way in common with others, to pass and repass over the present driveway on the west portion of said above described land, said driveway being about thirteen feet and seven inches in width, east and west, and extending Northerly from said Main Street over and across said above describe premise.

*Id*. The driveway posts no longer exist. An undated photograph of the Clark homestead mansion shows that the posts were indeed large. *See* Ex. T.

2

Over the ensuing years, the Clark family sold off other portions of the property, including the parcel now owned by Plaintiffs that was transferred to Herbert H. Beeman in 1924. *See* Exs. 25, E. The Warranty Deed for that sale described the premises as follows:

> The premises known as "Joseph Clark" brick office building with the lot on which it stands, which premises are bounded EASTERLY by the west line of land deeded to the town of Milton by Kate R. Clark; SOUTHERLY by Main Street, so called; WESTERLY and NORTHERLY by the road running from Main Street northerly and northwesterly to the grist mill and other property. We include herewith such right-of-way to the road on the east side of this lot as was reserved by Kate R. Clark in her deed to said Town of Milton.

*Id*. Beeman later sold the property to PELCO. *See* Exs. 30, F. However, the Beeman deed mistaken located the right-of-way on Beeman's property, rather than the Town of Milton's property. This is also erroneously reflected on the Silloway survey map, likely drawn for the sale. *See* Ex. G. Thus, the 1938 Warranty Deed states:

> Said land and premises are subject to the right of the town of Milton and its successors to pass and repass over a right of way 13 feet and 7 inches wide and 184-38 feet long adjoining the west line of said Clark Memorial.

Exs. 30, F. As the deed describes, the Silloway survey shows the right-of-way extending from the edge of the Clark Memorial property line east onto the Beeman property to the center of a square driveway post, with a width of 13 feet and 7 inches, rather than on the Town's property. Ex. G. Both parties' experts testified that this location of the easement is in error, and the parties seem to agree.

In 1982, Plaintiffs' property was owned by Armand Brisson. The use of the building continued to be commercial and residential. Access to the building, which was originally used by Joseph Clark as an office, was gained from Route 7 and the east or north side, facing the river. At that time, there were stairs on the outside of the building leading to the second floor. Mr. Brisson typically parked his vehicle on that side of the building. However, a photograph of an aerial view of the Milton Dam in 1982 seems to show a dirt driveway with a path turning off to the left behind the building on the Brisson property, with cars parked in the area. According to the credible testimony of two longtime neighbors of the property, the driveway was used by people on foot and vehicles that gave access to the upper two floors of the building. When Mr. Brisson hosted dinner parties, people would drive in and access the property using the driveway. The Town owned the Clark Memorial Property at this time, and so the access driveway and right-of-way was also used by the public. However, later in his life, Mr. Brisson stopped being able to drive. Upon his death, the building was in extremely poor condition and the backyard was full of garbage and junk. Ms. Turner gave the Town her permission to use the right-of-way to access the Brisson property and haul away the trash and other junk from the area.

The Town of Milton used the Clark Memorial property as its Town hall, library, and for other public uses until the 1990s, when the Town built new town hall. Eventually, the property

was sold to Defendant. The sale carried forward the right-of-way as originally granted by Kate Clark. *See* Exs. 26 and 27.

In early 1997, the Clark Memorial property was purchased by Adams Properties LTD. In connection with the purchase, a survey was performed and surveyor's report prepared by the engineering firm Krebs and Lansing. *See* Exs. 28, 31. By this time, the original driveway posts marking the driveway were gone and only "remnants of brick rubble remain[ed]." Ex. 28 at 2. The survey and report noted the error in the Beeman deed and the conflict created with the original Clark conveyance. *Id*. The survey depicted the right-of-way as extending from the edge of the shared property line between the Brisson and Clark Memorial properties, extending 13.58 feet (an engineering measurement that is equivalent to 13 feet, 7 inches) in width onto the Clark Memorial Property (which was being proposed for sale to Adams). *See* Ex 31. Survey Note 6 mentions the original right-of-way and the error in the Beeman deed to PELCO. The survey also shows the presently existing gravel driveway as migrating away from the property line and curving toward the building in order to better access the back portion. *Id*. The property was then sold to Armand and Christine Turner in October 1997. *See* Ex. 26.

In 2002, the Turners sought to make improvements to the building and applied for a zoning permit to the Town of Milton. *See* Ex. P. The application includes a site plan drawing of the property, including the right-of-way, again measured 13 feet, 7 inches beginning at the Turner-Brisson contiguous property line. *Id*. at 2. Prior to this, a proposal was submitted to the Milton Development Review Board in 1998 in connection with the Turners' plans to open a restaurant and bar on the property, which called for the unpaved driveway in the right-of-way "to be used for one-way outbound traffic" only. *See* Ex. N at 2. The 2002 site plan drawing reflects this proposed directional change. In 2015, Ms. Turner again made an application to the Town of Milton, which relied on the earlier 2002 site plan drawing. *See* Ex. Q.

Finally, in 2019, after Plaintiffs purchased their property from the Brisson Estate, they retained Albert Harris of Harris Surveying & Land Dispute Evaluation to prepare a survey of the property showing the location of the right-of-way. *See* Ex. 1 (Note 1: "The purpose of this survey is to locate, monument and illustrate the right of way over lands of Christine Turner that benefits the property of Karinda Stoakes and Marty Steinhausen and others. In particular, the right of way provides at-grade access to the second story of the historic 'brick office building.'" The survey concurs with the location of the right-of-way shown on the 1997 Krebbs and Lansing survey, in that it extends from the Turner property line onto her property for a width of 13.58 feet (the engineering measurement). Notably, the paved asphalt entrance and eastern edge of the dirt driveway are shown to have moved outside of the original path, likely over time in connection with use. *See id*.

The Parties' Claims and Disputed Issues.

As noted above, the key disputed issue between the parties is the location of the right-of-way, and to some extent, the parties' permissible use of it. Initially, the parties' relationship was cordial. However, when Plaintiffs began to renovate their property, they sought to use the right-of-way for trucks, supplies, and other equipment, but Defendant interfered with these efforts from time to time by parking her vehicle near the entrance of the driveway in a manner that

partially blocked Plaintiffs' access or made it more difficult to use the right-of-way. Plaintiffs had planned to build a garage in the back or on the side of the building, but abandoned that effort. There were times when Defendant called law enforcement to report on Plaintiffs' activities, and she took numerous pictures of them.

Ms. Turner disputes that the right-of-way runs from the edge of her property line, and she objects to Plaintiffs' use of it. While she gave the Town temporary permission to use the driveway to remove items from the Brison property, she never consented to Plaintiffs using the driveway to access the side and back of their building. Ms. Turner believes that the construction work performed by Plaintiffs caused damage to her property, including to her trees, flowers, and other plants, and this clearly upsets her. Defendant contends Plaintiffs removed soil and driveway stone from her property, moved and destroyed an original stone boundary wall, caused a tree to fall into the driveway, and caused increased water flow. Numerous pictures of Defendant's property and the alleged damage were admitted into evidence. Plaintiffs deny causing any damage to Defendant's property, and no other testimony was presented to establish that the claimed damage was caused directly or indirectly by the actions of Plaintiffs. Defendant did not testify as to the value of any of the damages she claims were caused Plaintiffs or establish any out-of-pocket costs she incurred.

Both parties presented expert witnesses to testify regarding the location of the right-of-way. Plaintiffs called Christopher Haggerty, who has 25 years' experience as a licensed land surveyor.[2] In Mr. Haggerty's opinion, Plaintiffs are the beneficiaries of an easement on Defendant's land that runs along the boundary line between the two properties, without any gaps in between. Mr. Haggerty relies on the express language of the Clark deed to Milton and adopted the 2019 Harris survey, which measures the area of the right-of-way as extending 13 feet, 7 inches (or 13.85 feet in an engineering measure) from the property line west on Defendant's property. Mr. Haggerty noted to error in the Silloway map and Beeman deed that is based on it, which placed the easement on Plaintiffs' property and not Defendant's. He explained that the right-of-way is in the correct location, but the boundary line should be on the left side, not the right. *See* Ex. G. Mr. Haggerty also relied on the 1997 Krebs and Lansing survey report, which noted the conflict and states that the senior deed (Clark to Town of Milton) controls the location of the right-of-way. The subsequent deeds conveying Defendant's parcel carry forward the correct easement language. *See* Exs. 26 & 27. Mr. Haggerty noted that, as seen on several surveys, the current driveway and traveled portion of the right-of-way may have migrated over time out of the area originally conveyed, due to the conditions of the property and the use it was subject to.

In support of her position, Defendant called Ian Jewkes, who has worked as a land surveyor and civil engineer for 40 years. In fact, Mr. Jewkes was employed by Krebs and Lansing in 1997, and was part of the surveying team that produced the 1997 survey. *See* Exs. 28, 31. He now believes that survey incorrectly shows the west side of the right-of-way as running along the boundary line between the properties. Mr. Jewkes acknowledged that he first arrived at the theory of the existence of a gap between the edge of the right-of-way and the property line in 2021 when he was doing field work for this case. He visited the parties' properties to find

---

[2] Plaintiff's original surveyor, Albert Harris, is now deceased.

evidence of the old driveway posts, which no longer existed. All that remained was a pile of bricks. Moreover, the original driveway also does not exist. The area around the property line was grown in and the current path is curved in order to reach a newer parking area located in the back of Defendant's building back. Mr. Jewkes testified he disagrees with the corner boundary pin placed by Harris; from his measurements it is a foot short. Mr. Jewkes could not offer an opinion as to the location of the driveway or the right-of-way as it extends north and south in between the original posts; however, it is his view that there is a gap of at least several inches at the beginning and end of the driveway (that is, the right-of-way narrows), given that the property line is stated as running from the middle of the brick driveway post. *See* Exs. 24, A.

Conclusions of Law

This case turns on the disputed issue of the location and scope of the right-of-way established in the deed from Kate Clark to the Town of Milton, and more specifically, whether the width of the right-of-way is measured from the boundary line or from some other point on Defendant's property. Generally, in "construing a deed, the court must 'give effect to the intention of the parties if it can be gathered from the language used when interpreted in connection with, and in reference to, the subject matter and purpose sought to be accomplished at the time the instrument was executed.'" *Creed v. Clogston*, 2004 VT 34, ¶ 17, 176 Vt. 436, 852 A.2d 577 (quoting *McDonough v. W.W. Snow Constr. Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973)). Thus, "in interpreting a deed, [courts] look to the language of the written instrument because it is assumed to declare the intent of the parties." *Kipp v. Estate of Chips*, 169 Vt. 102, 105, 732 A.2d 127, 129 (1999). Here, the language of the deed is clear and unambiguous. Kate Clark reserved a right to travel back and forth ("pass and repass") along the then-existing "driveway on the west portion" of the land being gifted (which is now owned by Defendant). Further, Ms. Clark described the driveway as "being about thirteen feet and seven inches in width, east and west," and extending north from Main Street across the property. Exs. 24, A. The issue for the Court is that the driveway no longer exists as it did in 1916. Thus, the Court must determine the location of the driveway (and thus, the right-of-way) from the credible evidence in the record. *Cf.*, *Okemo Mountain, Inc. v. Lysobey*, 2005 VT 55, ¶ 8, 178 Vt. 608 (mem.) ("The location of a boundary line is a question of fact, to be determined on the evidence." (citing *Pion v. Bean,* 2003 VT 79, ¶ 15, 176 Vt. 1)).

I.      Plaintiffs' Claims.

The Court finds the record evidence establishes that the right-of-way created by Kate Clark is contiguous with the boundary line between the parties' properties. This conclusion is supported by the language of various deeds describing the right-of-way, the multiple surveys in evidence, and the expert and fact witness testimony. To begin, in conveying her land to the Town of Milton, Ms. Clark reserved "a full right of way . . . to pass and repass over the present driveway on the *west portion*" of the property." Exs. 24, A (emphasis added). It is not specified whether the existing driveway was contiguous with the property line. However, a few years later, the Clark family conveyed the adjoining parcel (now Plaintiffs' property) to H.H. Beeman and described the easement as the "*right-of-way to the road on the east side of this lot* as was reserved by Kate R. Clark in her deed to said Town of Milton." Exs. 25, E (emphasis added). This indicates that the existing driveway ran entirely along the east side of the parcel, in other

words, along the property line. If the driveway did not touch the property line, but rather was located some inches or feet to the east onto the Clark Memorial property, it would not have been accurate to describe it as a "road on the east side" of the lot. Similarly, when Beeman sold the property to PELCO in 1938, the right-of-way was stated as "adjoining the west line of said Clark Memorial" property. Exs. 30, F. While the parties acknowledge that the location of the driveway on Beeman's property rather that the Town of Milton's property was a mistake, it is notable that the driveway is again described as sharing the boundary line (i.e., "adjoining the west line" of the property). Indeed, this location of the driveway is reflected on the Silloway map, albeit mistakenly reversing the dominant and servient landowners. Ex. G.

In addition, the surveys and drawings done prior to this litigation all depict an easement that is 13 feet, 7 inches wide, as measured from the parties' shared property line. This includes the Silloway map, noted above, and the 1997 Krebs and Lansing boundary survey and report prepared for Adams Properties Ltd. "as a potential buyer" for the Clark Memorial property. Exs. 28, 31. The Surveyor's Report noted the mistake made by the Beeman deed and concluded that the Kate Clark 1916 deed controls. Ex. 28. The survey locates the original right-of-way as being measured from the western property line, extending a width of 13.58 feet onto the Clark Memorial property. Ex. 31. Likewise, the Harris survey obtained by Plaintiffs in 2019 concurs with the location of the right-of-way shown on the 1997 Krebbs and Lansing survey. Plans created on behalf of Ms. Turner, such as the site plan drawing of the property for the 2002 zoning application permit to the Town of Milton, depict the right-of-way in the same manner. Ex. P. Moreover, the evidence of the use of the driveway over time supports the Court's construction that the width of the driveway was measured from the property line. A 1982 photograph shows a dirt road with an opening onto the Brisson property and cars parked behind the building, and testimony from neighboring property owners established that people used the driveway to access the Brisson residence with vehicles or on foot, at least prior to Defendant's purchase of the Clark Memorial property.

Finally, the Court credits the testimony of Plaintiffs' expert, Christopher Haggerty, that there is no gap between the right-of-way and Defendant's property line. Mr. Haggerty's opinion is based on and consistent with the evidence detailed by the Court above. The Court finds that the testimony of Defendant's expert, Mr. Jewkes, is not entitled to persuasive weight, given that it was admittedly formed for purposes of this litigation, and is contrary to the conclusions reached by his former firm, Krebs and Lansing, in 1997, when he was part of that surveying team. Further, Mr. Jewkes could not offer an opinion as to the location of the right-of-way after it passed through the driveway post. He testified only that the driveway narrowed at each end where the posts stood, whereas the property line ran from the midpoint of the post; thus, by necessity, he posited, some gap existed at these locations. But this opinion is not inconsistent with the Court's finding that the width of the driveway *before* and *after* the brick posts ran from the property line, but then narrowed some number of inches at the posts marking the openings at either end of the property.

Defendant seems to argue that even if the original driveway was measured from her property line, Plaintiffs' use of the right-of-way to access their land is impermissible as contrary to the intent of original parties. The Court disagrees. As expressed in the plain language of the deed, Ms. Clark's intent in reserving the easement was to be able to go back and forth ("pass and

7

repass") over the existing driveway in order to access her land, which at the time included the parcel now owned by Plaintiffs. *See Hunsdon v. Farrar*, 128 Vt. 410, 414, 264 A.2d 809, 812 (1970) ("A right-of-way is generally defined as a right of passage over another person's land."). Defendant points to no language in the deed that would restrict the access points to the driveway or prevent a user from stepping off before the end point. *See, e.g.*, *Williams v. Green Power Ventures, LLC*, 303 A.3d 13, 29 (Conn. App. 2023) ("The absence of evidence of a use does not definitively indicate an intent to preclude such use, especially where the grant of the easement was a general right-of-way" (citing *Rowe v. Lavanway*, 2006 VT 47, ¶¶ 21-25, 180 Vt. 505)). Moreover, Defendant's assertion that such use would increase the burden of the easement is likewise without supporting evidence. *See Rowe*, 2006 VT 47, ¶ 23 (recognizing that "the manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude" (quoting *Restatement (Third) of Property, Servitudes* § 4.10 & cmt. f (2000)). As the Court has discussed, the easement as reserved by Ms. Clark allows traffic to pass over the driveway without restriction. Defendant fails to explain, let alone establish, how permitting vehicles to turn left only a short distance after entering the driveway off from Main Street would increase this burden. *See, e.g.*, *Roy v. Woodstock Cmty. Tr., Inc.*, 2013 VT 100A, ¶ 66, 195 Vt. 427 ("While we can conceive of situations in which increased use of an easement, even when the type of use is the same as its original use, could be so far above what was originally contemplated that it could be inconsistent with the use contemplated at the time of its creation or could materially increase the burden on the servient estate, this is not such a case." (quotation omitted)).

In sum, the Court finds in favor of Plaintiffs on their claims for declaratory judgment and to quiet title, and concludes that they have the benefit a right-of-way on Defendant's property that is 13 feet, 7 inches in width, measured from the parties' contiguous property line. In light of the Court's conclusion, the Court need not and does not reach Plaintiffs' claim for of easement by prescription.

Plaintiffs' Amended Complaint also asserts claims for trespass and nuisance based on Defendant's obstruction of access to the right-of-way. However, the law of trespass does not appear applicable. As our Supreme Court has recognized that "trespass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it." *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 8, 184 Vt. 207 (quoting W. Keeton et al., *Prosser & Keeton on the Law of Torts* § 87, at 622 (5th ed. 1984)). Plaintiffs do not have exclusive rights to possess or use the right-of-way, so they have failed to demonstrate any trespass.

On the other hand, "[t]o prove a nuisance, plaintiffs must demonstrate an 'interference with the use and enjoyment of another's property' that is 'both unreasonable and substantial.'" *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, ¶ 24, 199 Vt. 313 (quoting *Coty v. Ramsey Assocs.*, 149 Vt. 451, 457, 546 A.2d 196, 201 (1988)); *see also John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 10, 184 Vt. 207 ("[P]laintiffs claiming a nuisance have to demonstrate actual and substantial injury."). While nuisance law does not concern itself with every squabble between neighbors, our Supreme Court has concluded "that a sustained and intentional campaign to annoy a neighbor by interfering with the use and enjoyment of the

neighbor's property can amount to a private nuisance." *Jones v. Hart*, 2021 VT 61, ¶ 29, 215 Vt. 258. The Court finds Plaintiffs have failed to establish such a campaign. While the parties certainly had a dispute over the use of the right-of-way, it appears that Ms. Turner was continuing to use the driveway as she had done prior to Plaintiffs' purchase of the property. Further, although there were times that her vehicle blocked the driveway or made access more difficult, the evidence did not show that the interference rose to the level of being unreasonable and prolonged or substantial. Nor were Ms. Turner's actions as severe and pervasive as the conduct found to constitute a private nuisance in cases such as *Jones v. Hart*, 2021 VT 61, ¶ ¶ 41-49, or *Coty v. Ramsey Assocs.*, 149 Vt. at 457-59. In addition, during the hearing Plaintiffs failed to identify any lasting injury they have sustained or quantify or assign any value to any such harm. Moreover, their post-trial memorandum does not request damages for their nuisance claim; rather, it seeks only that punitive damages be imposed against Defendant. However, punitive damages "are permitted only when defendant's acts are not merely wrongful or unlawful, but intentional and deliberate and conducted with actual malice – that is, bad spirit and wrong intention, having the character of outrage frequently associated with crime." *Post & Beam Equities Grp.*, 2015 VT 60, ¶ 40 (quotation omitted). "The requisite degree of actual malice may be shown by conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights." *Id*. (quotation omitted). The Court finds Plaintiffs have failed to establish that Ms. Turner's actions rose to the level of egregious and malicious conduct required to warrant punitive damages. *See, e.g.*, *Fly Fish Vt., Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 28, 187 Vt. 541 (holding that "a defendant's knowing and even gross indifference to a plaintiff's rights [is] . . . insufficient to satisfy the malice threshold for exemplary damages"). Therefore, the Court finds in Defendant's favor as to Plaintiffs' claim for nuisance and request for punitive damages.

II.        Defendant's Counterclaim.

Defendant alleges that Plaintiffs have trespassed on her land by going over the area between the right-of-way and her property line to get to their land, and also by removing plants, rocks, and soil along the property line, causing damage to trees and increased water flow. "A person who intentionally enters or remains upon land in the possession of another without a privilege to do so is subject to liability for trespass." *Jones*, 2021 VT 61, ¶ 66 (quotation omitted). The Court concludes that Ms. Turner failed to meet her burden to prove a trespass by Plaintiffs.

First, as the Court held above, the right-of-way extends from the parties' shared property line onto Defendant's property. Therefore, there is no gap upon which Plaintiffs could have committed a trespass, nor are Plaintiffs prohibited from using the right-of-way to access their land. Second, during the hearing, Ms. Turner testified at length regarding the changes she has observed to her property following Plaintiffs' purchase of their parcel and the improvements they sought to make. The Court understands that Ms. Turner's sincere belief that Plaintiffs are destroying her property is causing her significant emotional distress. However, Ms. Turner did not testify that she has actually seen Plaintiffs doing the things she accuses them of, such as removing soil and driveway stone from her property, dismantling and taking the stones from an original boundary wall, or cutting down trees. In his testimony, Plaintiff Steinhausen denied

doing so, which the Court finds credible. Nor did Defendant present sufficient evidence to support a finding that Plaintiffs' actions and use of their own land have caused the claimed damage to Defendant's property, like increased waterflow or uprooting a tree that then fell on her house and driveway. Accordingly, the Court finds in favor of Plaintiffs on Defendant's counterclaim for trespass.

## Order

For the foregoing reasons, Judgment is entered in favor of Plaintiffs on their claims for declaratory judgment and to quiet title, and on Defendant's claim for trespass. The Court declines to award punitive damages against Defendant.

In addition, judgment is entered in favor of Defendant on Plaintiffs' claims for trespass and nuisance.

Plaintiffs shall submit a proposed judgment order within 14 days. *See* V.R.C.P. 58(d).

Electronically signed on November 20, 2025 at 5:54 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

10